(158 App. Div. 595.)

In re ABRAHAMS.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

1. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—PROCEEDINGS.

In a proceeding to discipline an attorney for professional misconduct, evidence *held* insufficient to justify a finding that an offer was made with the knowledge or approval of respondent that criminal proceedings he had instituted against a judgment debtor would be dropped, if the debtor would satisfy a judgment without prosecuting a motion for a new trial.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. § 53.*]

2. ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—EVIDENCE.

In a proceeding for the disciplining of an attorney for professional misconduct, evidence *held* sufficient to support a finding that criminal charges were instituted by the respondent to influence civil actions.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. § 53.*]

3. ATTORNEY AND CLIENT (§ 38*)—MISCONDUCT—DISBARMENT.

In view of Penal Law (Consol. Laws 1909, c. 40) § 570, making the compounding of crime a felony, an attorney, who institutes criminal proceedings with the view of compelling parties to a civil action to make a settlement on condition that the proceedings be dismissed, is guilty of grave professional misconduct, even though there be some basis in fact for the institution of the proceedings.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. § 38.*]

4. ATTORNEY AND CLIENT (§ 58*)—DISBARMENT—DEFENSES—PUNISHMENT.

In a proceeding to discipline an attorney for professional misconduct, consisting of instituting criminal proceedings with intent to influence civil actions by abandoning the criminal prosecutions upon the other party meeting his demands, a claim that the attorney did not know that that was unprofessional is no defense, and he will be suspended, though on account of youth and inexperience he is not disbarred.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 76–78; Dec. Dig. § 58.*]

Application to discipline Paul Abrahams, an attorney, for professional misconduct. Respondent suspended.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph M. Proskauer, of New York City, for petitioner.
L. K. Schlechter, of New York City, for respondent.

INGRAHAM, P. J. The Association of the Bar of the City of New York presented two charges against respondent, which were referred to a referee, who has filed his report. Both charges involved the preferment of criminal charges by the respondent for the purpose of influencing the decision of civil cases in which either the respondent or his client was interested.

The facts as to the first charge were: That the respondent as plaintiff had instituted an action against one Carl Spilka, which case had been tried and verdict rendered in favor of the respondent and against Spilka; that Spilka had moved to set aside the verdict and for a new trial,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and, while that motion was undetermined, the respondent preferred a criminal charge against Spilka of forgery in the alteration of the books of a corporation in which both the respondent and Spilka were interested. A warrant was issued, Spilka was arrested and brought before a magistrate, and on the hearing before the magistrate Spilka was discharged. There was testimony by the attorney for Spilka that, at the hearing before the magistrate, the respondent's counsel, who represented him, suggested that Spilka and the respondent could settle their differences and allow the proceedings to drop. That was denied by the respondent and by his counsel, and the referee has reported that the fact that any such offer was made with the knowledge or instigation of the respondent was not proved. The record conclusively establishes that, while the motion to set aside the verdict in favor of the respondent individually and against Spilka and for a new trial was pending, the respondent obtained on his own affidavit a warrant for the arrest of Spilka, and caused him to be taken before a magistrate, charged with a felony, with manifestly no foundation for the charge.

[1] We adopt the conclusion of the referee that the evidence would not justify a finding that a request was made, with the knowledge or approval of the respondent, that the criminal proceedings be dropped if Spilka would settle his controversy with the respondent.

[2] But we have the fact that a warrant was obtained upon a baseless charge of forgery against Spilka, and that he was arrested on that charge while a civil action was pending between the respondent and Spilka, and the inference is justified that, if there had not been a civil controversy between the respondent and Spilka, the respondent would not have presented such a charge against Spilka and would not have obtained a warrant for his arrest. The respondent concedes that all the facts upon which he based the charge were known to him before June, 1907, yet he preferred no charge nor intimated to any one that a crime had been committed until January, 1908, after he had obtained his verdict and when a motion to set it aside and grant a new trial was pending.

The respondent having adopted this process of enforcing a civil obligation, there was presented to him a second opportunity of using the same means in another civil controversy. It appears that the respondent was attorney for one Joseph Friedman, and in June, 1910, one Michael Bernstein recovered two judgments in the Municipal Court against Friedman; the respondent appearing as attorney for the latter in the litigation resulting in the two judgments. A discharged clerk of Bernstein subsequently made a statement to Friedman, or to the respondent, that Bernstein had testified falsely on the trial of the actions in which the judgments had been recovered. Friedman took Bernstein's discharged clerk into his employ, and the clerk made an affidavit stating that Bernstein's testimony on the trial was false. Armed with this affidavit, the respondent went to an assistant district attorney to induce the district attorney to prosecute Bernstein for perjury. The assistant district attorney, after an investigation, held that the evidence before him would not justify the district attorney in prosecuting Bernstein; but, as the assistant district attorney was about to

leave for his vacation, he referred the matter to another assistant district attorney, who also investigated the matter, and, after consulting with his superior, he also decided the evidence was insufficient to justify a criminal prosecution. While this proceeding was pending before an assistant district attorney, the respondent suggested to Bernstein and his attorney that, if Bernstein would satisfy the two judgments against Friedman and pay Friedman $250, his expenses in defending the action, the criminal proceedings would be withdrawn. This matter was taken into consideration by Bernstein's attorney, who submitted it to his client, who refused it, and then the respondent said he would not insist upon the payment of the $250 if Bernstein would satisfy the judgments. The assistant district attorney seems to have been aware that some negotiations for a compromise between Friedman and Bernstein were being considered, and then he insisted that respondent proceed with the charge at once; but, in consequence of the assistant district attorney's contemplated absence, the charges were referred to another assistant district attorney, as before indicated. The respondent had been advised by two assistant district attorneys that the evidence would not even justify a criminal prosecution. His efforts to use the criminal charges before the district attorney had failed. It appeared quite plainly that more pressure than a suggestion that the district attorney prosecute Bernstein was necessary, and the respondent again resorted to a proceeding before a magistrate. In his testimony before the referee, the respondent expressly states that the object of the charge was for the purpose of compelling Bernstein to satisfy the two judgments, and he further added that the criminal charge would not have been brought before the magistrate if Bernstein had satisfied the two judgments. However, after the district attorney refused to have anything to do with the prosecution, the respondent went before a magistrate, preferred the same criminal charge of perjury against Bernstein; that charge was heard by the magistrate and dismissed.

In the second charge the referee has convicted the respondent of unprofessional conduct. In relation to the second charge, it is perfectly apparent that the respondent was not justified in bringing the criminal charge against Bernstein solely upon the uncorroborated affidavit of the discharged clerk, and that the respondent at no time had in his possession the slightest evidence in corroboration of the unsupported affidavit.

I think the evidence clearly establishes the fact that both these criminal charges were instituted by the respondent, in one case to get the defendant against whom he had obtained a verdict to discontinue the proceedings to review it, and, in the other case, to get the person who has recovered two judgments against his client to satisfy the judgments and pay a sum of money to secure the discontinuance of the criminal proceedings.

[3] The respondent boldly claims that this was not professional misconduct; that a lawyer, having a claim against a third party, either for himself or for a third party, has the right to institute criminal proceedings against the third party to force him to pay the claim.

143 N.Y.S.—59

To establish that proposition the counsel for the respondent cites Continental National Bank v. National Bank of the Commonwealth, 50 N. Y. 575, and ends up his brief by saying:

"He instituted the proceedings against Bernstein, pressed on by his client, and on his client's behalf. He had no personal interest therein. He honestly believed that he could do as he did. We submit that not alone have the petitioners failed to establish any vice by respondent or malpractice on his part, but there is not a fact in the record which puts the slightest taint on respondent's character."

A reference to the case of the Continental National Bank v. National Bank of the Commonwealth, supra, shows that it was a case where a thief had obtained from a broker $50,000 in gold, by delivering to the broker a check with a forged certification of the plaintiff bank, and it was sought to stop plaintiff bank from denying the validity of the certification upon the ground that the certification had been presented to the teller of the bank and he had pronounced the certification valid before the thief had been able to get away with the money, and, relying upon the certification, the defendant had not pursued the thief to recover the money in his possession. The Court of Appeals held that the plaintiff bank was estopped from denying the genuineness upon that ground, and, in delivering the opinion, the Court of Appeals held that an arrest of the thief under those circumstances was a perfectly justifiable means of obtaining the property that had been stolen. Certainly that is a very different proposition from saying that making a criminal charge based upon false accusations against a debtor is a proper method of forcing the payment of a claim or the discharge of an indebtedness.

In our opinion a lawyer is never justified in using a criminal proceeding to collect a civil debt or enforce a civil right, and certainly not when it clearly appears that the facts upon which the criminal charge is made do not justify the charge. Much less is he justified in instituting a proceeding for punishment for a felony and then suggesting that the prosecution should be abandoned on receiving an advantage therefor, either for himself or for his client. Section 570 of the Penal Law provides:

"A person who takes money or other property, gratuity or reward, or an engagement or promise thereof, upon an agreement or understanding, express or implied, to compound or conceal a crime, or a violation of statute. or to abstain from or discontinue, or delay, a prosecution therefor, or to withhold any evidence thereof, except in a case where a compromise is allowed by law, is guilty: 1. Of a felony, punishable by imprisonment in a state prison for not more than three years, where the agreement or understanding relates to a felony," not punishable by death or imprisonment in a state prison for life.

Upon the respondent's own testimony in the Bernstein Case, he was very close to an attempt to commit this crime of compounding a felony. We therefore adopt the report of the referee.

[4] In extenuation, the respondent claims that he was entirely frank before the referee, that he was a young man without experience in criminal law, that he had no thought that he was guilty of any misconduct in what he did, that he was convinced the judgment in

favor of Bernstein and against his client was obtained by perjury, and that he acted in entire good faith and without any intention of committing any misconduct. That such an explanation should be made by any member of the profession—by an attorney and counselor at law—is an example of the absence of the high ideals that formerly existed and which controlled the members of the profession. If the bar is to regain the respect in which it has been held, it is essential that practices of this kind shall be condemned in the strongest terms by the courts and those guilty of such practices disciplined. If this respondent had been a more experienced practitioner, or if we thought his conduct was the result of anything more than the absence of a knowledge of the impropriety of his conduct, we should feel it our duty to disbar him. But considering the fact of his youth and inexperience, and that he did not intend to violate the law, we have concluded to suspend him from practice for one year, with leave to apply for reinstatement at the expiration thereof, upon proof that he has actually abstained from practice during that period and has otherwise properly conducted himself. All concur.